```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KEITH ASHLEY, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action<br>No. 15-3153 (JBS-AMD) |
| DAVID METELOW, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Keith Ashley, Plaintiff Pro Se
#575398/589308B
Northern State Prison
168 Frontage Road
Newark, NJ 07114

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

Before the Court is Plaintiff Keith Ashley's ("Plaintiff"), submission of a civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff is a convicted and sentenced state prisoner currently confined at Northern State Prison, Newark, New Jersey. By Order dated May 27, 2015, this Court granted Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and ordered the Clerk to file the complaint. (Docket Entry 2). At this time, the Court must review the complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for

failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the complaint will proceed against Defendants Siebert and Marrocco only.

## II. BACKGROUND

Plaintiff brings this civil rights action against Defendants David Metelow and Don Siebert, Supervisors of Education at South Woods State Prison ("SWSP"), Mr. Marrocco, Teacher for the Culinary Arts program, and Tanya Steltz, Secretary for Facility III. The following factual allegations are taken from the complaint and are accepted for purposes of this screening only. The Court has made no findings as to the truth of Plaintiff's allegations.

Plaintiff applied to join the SWSP Culinary Arts Program at various points in time between October 2007 and July 2014 during his confinement at that facility. (Complaint, Docket Entry 1 at 4 ¶ 1). On October 23, 2007, Plaintiff was informed that he would be placed on the program's waiting list, but he was not actually placed onto the list until June 2, 2008. (Id. at 4 ¶ 1(A)). Plaintiff reapplied to the program on September 28, 2009, and his request was returned to him with the note: "Your P.E.D. [parole eligibility date] is 2025. Mr. Marrocco takes students within 2-year[s] of their P.E.D." (Id. at 4 ¶ 1(B)). In spite of

this statement, Plaintiff completed another Programs and Services Request form on December 9, 2009, as the inmate handbook indicated the program based admission on a first-come-first-served basis. (Id. at 4 ¶ 1(E)). The response he received indicated he had been placed on the waiting list the next day, December 10. (Id. at 4 ¶ 1(C)).

Plaintiff alleges he was scheduled for an entry interview on August 20, 2013, but he was turned away from the interview site as his name was not on the interview list. (Id. at 4 ¶ 1(D)). Plaintiff filled out a grievance form objecting to his absence from the list, and he received a response indicating he had been erroneously deleted from the appointment list. (Id. at 4 ¶ 1(D)). Plaintiff thereafter submitted another request form on September 22, 2013, and the response was a curt "will advise." (Id. at 4 ¶ 1(E)). Plaintiff later received a letter from Defendant Seibert indicating that the certificate earned through the program expired after five years, therefore inmates with parole eligibility or maximum release dates within the next two years are given preference for entry into the program. (Id. at 5 ¶ 4). Defendant Seibert invited Plaintiff to reapply when he was within the two-year time frame.[1] (Id. at 5 ¶ 4). Plaintiff

---

[1] According to the State of New Jersey's Inmate Locator, *available at* https://www20.state.nj.us/DOC_Inmate/inmatefinder, Plaintiff's maximum release date is January 27, 2023, and has no

3

filed an administrative appeal with SWSP Administrator Kenneth Nelson, who responded Plaintiff was "not banned from Culinary Arts class. A review of your Education Department record revealed that you have been off and on the Culinary Arts Waiting List since 2007." (Id. at 5 ¶ 4).

Plaintiff filled out one more request form for the Culinary Arts Program on July 11, 2014, and he was denied entry into the program because his high school diploma had not been verified. (Id. at 4 ¶ 1(F)). Defendant Steltz's initials appeared on the form denying Plaintiff entry. (Id. at 4 ¶ 1(F)).

Plaintiff argues that the Education Department has a policy, stated in the SWSP prisoner handbook, that "any education Programs waiting list will be developed on a first-come, first-serve basis." (Id. at 4 ¶ 1(F)). He asserts Defendants violated his right to Free Association under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and N.J. ADMIN. CODE § 10A:4-3.1 by failing to inform Plaintiff of the complete requirements for entry into the program.

Plaintiff asks this Court to require SWSP to admit prisoners into the Culinary Arts program on a first-come, first

---

current parole eligibility date. (Last visited January 21, 2016).

serve basis. He also seeks $500,000 in compensatory damages and $200,000 in punitive damages from each defendant. (Id. at 7).

**III. STANDARD OF REVIEW**

**A. Standards for a Sua Sponte Dismissal**

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(b) because Plaintiff is a prisoner proceeding *in forma pauperis*.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte*

5

screening for failure to state a claim,[2] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). Although *pro se* pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

---

[2] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x. 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

**B. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**IV. ANALYSIS**

**A.   Eleventh Amendment**

To the extent Plaintiff seeks relief against Defendants in their official capacities, they are immune from suit under the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by

7

Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. A suit against a public official "'in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . .'" *Printz v. United States*, 521 U.S. 898, 930–31 (1997) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). The *Will* Court concluded that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. at 71; *see also Smith v. New Jersey*, 908 F. Supp. 2d 560, 563-64 (D.N.J. 2012).

As Defendants are state officials, the complaint must be dismissed against them in their official capacities because it cannot proceed in federal court. This Court must still assess Defendants' individual liability, however.

**B. First Amendment Right of Association**

Plaintiff argues Defendants violated his First Amendment right to free association by depriving him of the opportunity to take the Culinary Arts Program and associate with other prisoners.

"[F]reedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (internal citations omitted). In spite of this observation, the Supreme Court declined to hold or imply

8

"that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners." *Id.; see also Pell v. Procunier*, 417 U.S. 817, 822 (1974). ("[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."). "[C]hallenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system . . . ." *Pell*, 417 U.S. at 822; *see also Overton*, 539 U.S. at 132; *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

Plaintiff appears to be "alleging that the restrictions were not rationally related to legitimate penological interests[,]" *Cordero v. Warren*, 612 F. App'x 650, 653 (3d Cir. 2015), but were rather the result of racial discrimination. On the other hand, it is quite unclear that denial of entry into a prison training program should be viewed as the denial of some "associational" right merely because the Plaintiff will not be among those in the training program. It may be more appropriate to view such a claim through the doctrine of equal protection instead, and the Court does not decide the issue at this stage without benefit of briefing. "Although the defendants may ultimately show that their actions were justified, at this early stage we must accept [Plaintiff's] allegations as true." *Id.*

9

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (holding *sua sponte* dismissal of free association claim was premature). Plaintiff's First Amendment Free Association claim shall be permitted to proceed at this time against Defendants Marrocco and Seibert only, as he has not stated factual grounds for the direct involvement of the other named defendants.[3]

**C. Equal Protection**

Plaintiff asserts Defendants violated his Fourteenth Amendment right to Equal Protection by admitting Caucasian prisoners into the Culinary Arts program while denying similarly situated African American prisoners, including Plaintiff, entry into the program. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216 (1982)). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (b) he was treated differently from similarly situated inmates. *See id.*

---

[3] Stelz's and Metelow's individual liabilities are analyzed *infra*, Part IV.E.

10

Plaintiff has sufficiently pled an Equal Protection violation to withstand summary dismissal under 28 U.S.C. § 1915. Plaintiff states he is member of a protected class as a racial minority. Plaintiff indicates he was informed Defendant Marrocco did not admit students with more than two years before their PEDs, (Complaint at 4 ¶ 1(B)), but he alleges that Caucasian prisoners with more than two years left before their PEDs, and who have not been on the program's waiting list as long as African American prisoners, were admitted into the program while he was not. (Id. at 7). His Equal Protection claim shall therefore be permitted to proceed at this time against Defendants Marrocco and Seibert only, as he has not sufficiently alleged direct involvement by the other named defendants.[4]

**D. State Law Claim**

Plaintiff argues Defendants violated his Inmate Rights and Responsibilities, N.J. ADMIN. CODE § 10A:4-3.1.[5] Included in the section on inmates' rights is "the right to be informed of the rules, procedures and schedules concerning the operation of the correctional facility[,]" and the "right to participate in counseling, education, vocational training, and employment as far as resources are available and in keeping with your

---

[4] See infra, Part IV.E.
[5] This Court has supplemental jurisdiction over Plaintiff's state law claim, 28 U.S.C. 1367(a).

11

interests, needs and abilities." N.J. ADMIN. CODE § 10A:4-3.1(a)(2),(10) (West, WestlawNext, Current through 48 N.J. Reg. Issue 2 (Jan. 19, 2016)). Inmates have the corresponding "responsibility to know and abide by the rules, procedures and schedules concerning the operation of the correctional facility[,]" and "to take advantage of activities (such as counseling, education, vocational training and employment) which may help [them] live a successful and law abiding life within the correctional facility and in the community." N.J. ADMIN. CODE § 10A:4-3.1(b)(2),(11) (West, WestlawNext, Current through 48 N.J. Reg. Issue 2 (Jan. 19, 2016)).

Plaintiff asserts Defendants' failure to advise him of the additional admission requirements of the culinary arts program, that inmates be within two years of their PEDs and have a high school diploma, violated his rights to notice of the rules and to participation in the program.

Assuming without deciding that a private right of action does exist,[6] Plaintiff has set forth sufficient facts to indicate

---

[6] New Jersey courts and at least one court in this District have entertained claims under N.J. ADMIN. CODE § 10A:4-3.1. *See Allah v. Hayman*, No. 08-1177, 2011 WL 1322186 at *4 (D.N.J. Apr. 1, 2011) (dismissing the claim for lack of sufficient factual allegations), *appeal dismissed as frivolous*, 422 F. App'x 632 (3d Cir. 2011); *Bryant v. Dep't of Corr.*, 2006 WL 59819 (N.J. Super. Ct. App. Div. Jan. 12, 2006) (rejecting the petitioner's appeal under N.J. ADMIN. CODE § 10A:4-3.1(a) based on the substantive record). Without the benefit of any briefing on the

that Defendants Marrocco and Seibert failed to provide sufficient notice to Plaintiff of the admission requirements. As he has not stated factual grounds for the other named defendants' direct involvement,[7] this claim shall be dismissed against them.

### E. Defendants Steltz and Metelow

The claims against Defendants Steltz and Metelow must be dismissed for failure state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B). The sole mention of Defendant Steltz in Plaintiff's complaint is that she attached her initials to the form denying Plaintiff admittance to the culinary arts program. (Complaint, Docket Entry 1 at 4 ¶ 1(F)). There is no indication in the complaint that she was involved in the decision to deny Plaintiff entry, nor can a reasonable inference be drawn in Plaintiff's favor on that point. As Plaintiff has not set forth a factual basis for holding Defendant Stelz personally liable, she must be dismissed from the case.

Likewise, Plaintiff fails to state a factual basis for holding Defendant Metelow liable. Plaintiff identifies Defendant Metelow as the Supervisor of Education as SWSP, (Id. at 3), and

---

issue, the Court declines to rule that a private right of action to enforce N.J. ADMIN. CODE § 10A:4-3.1 does or does not exist.
[7] See infra, Part IV.E.

alleges he notified Metelow of his inability to enter the program, (Id. at 5 ¶ 6). Plaintiff states no other basis of liability. Failure to process or respond to an inmate's grievances, however, have been held to not violate any right to due process, *see, e.g.*, *Glenn v. DelBalso*, 599 F. App'x 457, 459 (3d Cir. 2015); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988); *Stringer v. Bureau of Prisons, Federal Agency*, 145 F. App'x 751, 753 (3d Cir. 2005) (alleged failure to process or respond to inmate's grievances did not violate his rights to due process and is not actionable); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del.) *aff'd*, 74 F.3d 1226 (3d Cir. 1995) (holding that if a state elects to provide a grievance mechanism, violations of its procedures do not give rise to a § 1983 claim), therefore Defendant Metelow cannot be liable under § 1983 on this basis.

To the extent Plaintiff asserts a claim against Defendant Metelow based on his position as the supervisor in charge of the Education Department, his complaint still fails to state a basis for individual liability. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). State actors are liable only for their own unconstitutional conduct. *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012).

The Third Circuit has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates: (1) "liability may attach if they, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm"; or (2) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiffs rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (internal citations omitted), *rev'd on other grounds sub nom Taylor v. Barkes*, 135 S. Ct. 2042 (2015). "[U]nder *Iqbal*, the level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Id.* at 319. This Court cannot plausibly find liability under either theory as Plaintiff has not set forth any facts indicating Defendant Metelow either established a discriminatory policy himself, or that he was aware of and condoned his staff's discriminatory actions. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ("[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.").

Defendant Metelow must be dismissed from the case at this time without prejudice to Plaintiff's right to move to amend his claims.

**F. Leave to Amend**

As Plaintiff may be able to set forth facts that would correct the deficiencies noted herein, he shall be given leave to move to amend the complaint. Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, *Federal Practice and Procedure* 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.* Plaintiff is also advised that he may not re-plead claims that have been dismissed with prejudice.

**V.   CONCLUSION**

For the reasons stated above, Plaintiff's claims shall be permitted to go forward against Defendants Siebert and Marrocco only. If Plaintiff seeks to reinstate claims that have been dismissed without prejudice, he may move for leave to file an

16

amended complaint, which shall be subject to this Court's screening, if he can cure the deficiencies noted herein, within 30 days hereof.

An appropriate order follows.


**January 21, 2016**                             **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE
                                                 Chief U.S. District Judge