IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| KEITH ASHLEY, | HONORABLE JEROME B. SIMANDLE |
|---|---|
| Plaintiff, | |
| v. | Civil Action No. 15-3153 (JBS-AMD) |
| DAVID METELOW, et al., | |
| Defendants. | **OPINION** |

**APPEARANCES**:

KEITH ASHLEY, #575398/589308B
East Jersey State Prison
Lock Bag R
Rahway, NJ 07065
    Plaintiff pro se

GURBIR GREWAL, ATTORNEY GENERAL OF NEW JERSEY
    By: SUZANNE DAVIES, Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625
    Attorneys for Defendants David Metelow, Don Siebert, Mr. Marrocco, Tanya Stelz

**SIMANDLE, District Judge:**

I.    **INTRODUCTION**

Defendants David Metelow, Don Siebert, Mr. Marrocco, and Tanya Stelz have moved to dismiss Plaintiff Keith Ashley's civil rights complaint. Motion, Docket Entry 46. Plaintiff opposes the motion. Opposition, Docket Entry 48. The motion is being decided on the papers pursuant to Federal Rule of Civil Procedure 78. For

the reasons set forth below, the motion is granted in part, but denied as to Plaintiff's equal protection claim.

## II. BACKGROUND

Plaintiff originally filed this civil rights action against Defendants David Metelow and Don Siebert, Supervisors of Education at South Woods State Prison ("SWSP"), Mr. Marrocco, Teacher for the culinary arts program, and Tanya Steltz, Secretary for Facility III alleging they violated his right to Free Association under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the New Jersey Administrative Code for denying him entrance into the SWSP Culinary Arts Program and for failing to inform him of the complete requirements for entry. After reviewing the complaint, the Court permitted the complaint to proceed only against Siebert and Marrocco as Plaintiff had not sufficiently alleged personal involvement by the other named defendants. January 22, 2016 Order, Docket Entry 4. On February 7, 2017, the Court permitted Plaintiff to amend his complaint and reinstated the claims against Steltz and Metelow. February 7, 2017 Order, Docket Entry 19.

According to the amended complaint, Plaintiff applied to join the SWSP culinary arts program at various points in time between October 2007 and July 2014 during his confinement at that facility. Amended Complaint, Docket Entry 11 ¶ 1. He specifically alleges he applied to the program on October 23, 2007, September

2

28, 2009, December 9, 2009, June 24, 2013, August 28, 2013, September 22, 2013, April 24, 2014, July 7, 2014, and July 11, 2014. *Id.* ¶ 1(B)(1) n.16. He alleges Steltz placed him on the computer literacy class waiting list without verifying his high school diploma but rejected him from the culinary arts program for failure to verify his diploma. *Id.* ¶ 1(B)(1)(a)-(b) n.17-18.

Plaintiff also alleges he was scheduled for an entry interview on August 20, 2013, but Officer Lynch turned him away from the interview site stating Plaintiff's name was not on the interview list. *Id.* ¶4(F). Plaintiff states he saw his name on the list and that Officer Lynch had a "personal vendetta" against him. *Id.* ¶ 4(F) n.32.[1] He filled out a grievance form objecting to his absence from the list, and he received a letter from Seibert indicating that the certificate earned through the program expired after five years, and therefore that inmates with parole eligibility or maximum release dates within the next two years are given preference for entry into the program. *Id.* ¶ 4(H). Plaintiff alleges Caucasian inmates with more than two years left before their parole eligibility dates ("PEDs") and who were put on the waiting list after Plaintiff were permitted to enroll in the program. *See id.* ¶¶ 4(D)(9)(a), (G).

---

[1] The Court dismissed Plaintiff's claims against Officer Lynch on February 7, 2017. Docket Entry 19.

Plaintiff wrote to SWSP Administrator Nelsen regarding the difficulty he was having enrolling in the program. Nelsen responded: "This office is in receipt of your appeal received on October 8, 2013, in reference to participating in the Culinary Arts Program. Be advised that you are not banned from Culinary Arts class. A review of your Education Department record revealed that you have been off and on the Culinary Arts Waiting List since 2007." *Id.* ¶ 4(H). Plaintiff states he wrote to Nelsen, Metelow, and Siebert about being denied entry into the class on several occasions over the years regarding his repeated denials of entry into the program and alleged discrimination by SWSP staff.[2] *Id.* ¶ 6(VI).

Defendants now move to dismiss the amended complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Plaintiff opposes the motion. Opposition, Docket Entry 48.

**III. STANDARD OF REVIEW**

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which

---

[2] Nelsen is also named as a defendant in this matter but has not been served with the amended complaint. *See* Docket Entry 42.

it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted).

**IV. ANALYSIS**

**A. First Amendment Right of Association**

Defendants move to dismiss Plaintiff's First Amendment free association claim, asserting the rights protected by the amendment are limited to "certain intimate human relationships" and "the right to associate for the purpose of engaging in activities protected by the First Amendment – speech, assembly, petition for

redress of grievances and the exercise of religion." Motion at 15-16.

"[F]reedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (internal citations omitted). However, the Supreme Court has declined to hold or imply "that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners." *Id.; see also Pell v. Procunier*, 417 U.S. 817, 822 (1974)("[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."). "[C]hallenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system . . . ." *Pell*, 417 U.S. at 822; *see also Overton*, 539 U.S. at 132; *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

"The Court also has recognized that the right to engage in activities protected by the First Amendment implies 'a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, *educational*, religious, and cultural ends.'" *Bd. of Directors of Rotary Int'l v. Rotary*

6

*Club of Duarte*, 481 U.S. 537, 548 (1987) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)) (emphasis added).

Here, Plaintiff alleges Defendants wrongly denied him the opportunity to associate with other prisoners interested in pursuing culinary education. Although denial of entry into a prison training program could theoretically be viewed as the denial of some "associational" right, Plaintiff's particular claim does not appear to be properly viewed as such because he does not challenge a policy that allegedly denied him the ability to associate with his fellow hopeful chefs, *e.g.,* the requirement to have one's parole eligibility or maximum release dates within the next two years in order to enter the program. *See also Roberts*, 468 U.S. 609 (challenge to policy denying women membership in the United States Jaycees). Rather, he alleges that Defendants are refusing him entry into the program not because of an official policy but because of racial discrimination. It therefore appears more appropriate to view Plaintiff's allegations through the doctrine of equal protection.

The First Amendment claim shall be dismissed.

**B. Equal Protection**

Defendants argue Plaintiff's non-enrollment into the culinary arts program was not motivated by race but was due to his being more than two years from his PED. They argue this policy is rationally related to a legitimate government interest because the

7

culinary certificates expire after five years. "Therefore, the Department of Corrections must give preference, for financial and pragmatic reasons, to inmates whose Parole Eligibility and maximum release dates are within the next two years." Motion at 14-15.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216 (1982)). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (b) he was treated differently from similarly situated inmates. *See id.*

Plaintiff has alleged that SWSP "allows the Caucasian prisoners, who are not within their two (2) years of their Parole Eligibility Date (P.E.D.) or Maximum Date and be allowed to take the vocational training (culinary arts program) . . . ." Amended Complaint ¶ 6(2)(a). As the Court must accept Plaintiff's allegations as true for purposes of the motion to dismiss, he has sufficiently alleged an equal protection claim, namely, that a state official discriminated against him pertaining to prison training classes based upon race, as similarly situated individuals of a different race were treated more favorably and

admitted to the program. Whether Plaintiff's race played a significant role in the decision remains to be proved by Plaintiff.

Defendants' motion to dismiss this claim is denied.

### C. Administrative Code Claim

Plaintiff argues Defendants violated his Inmate Rights and Responsibilities, N.J. ADMIN. CODE § 10A:4-3.1. Included in the section on inmates' rights is "the right to be informed of the rules, procedures and schedules concerning the operation of the correctional facility[,]" and the "right to participate in counseling, education, vocational training, and employment as far as resources are available and in keeping with your interests, needs and abilities." N.J. ADMIN. CODE § 10A:4-3.1(a)(2),(10). Inmates have the corresponding "responsibility to know and abide by the rules, procedures and schedules concerning the operation of the correctional facility[,]" and "to take advantage of activities (such as counseling, education, vocational training and employment) which may help [them] live a successful and law abiding life within the correctional facility and in the community." N.J. ADMIN. CODE § 10A:4-3.1(b)(2),(11). Defendants argue these code provisions do not provide for a private cause of action.

The portions of the administrative code cited by Plaintiff do not explicitly provide for a private cause of action. When a

statute does not expressly provide a private right of action, New Jersey courts "have been reluctant to infer" such a right. *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001). The factors used by courts to determine whether a statute confers an implied private right of action include whether: "(1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy." *Id.* at 1143. While courts give weight to all three factors, "the primary goal has almost invariably been a search for the underlying legislative intent." *Id.* (quoting *Jalowiecki v. Leuc*, 440 A.2d 21, 26 (N.J. Super. Ct. App. Div. 1981)). *See also Ferraro v. City of Long Branch*, 714 A.2d 945, 955 (N.J. Super. Ct. App. Div. 1998) ("[T]he breach of administrative regulations does not of itself give rise to a private cause of action.").

Plaintiff is clearly among the class of persons meant to benefit from these provisions, but "[t]here is no support that the Legislature intended these provisions to provide a basis for a civil suit for damages, or authorized the Commissioner of the Department of Corrections to create a basis for state civil liability in the administrative code." *Turner v. Johnson*, No. 17-0541, 2018 WL 2859678, at *6 (D.N.J. June 11, 2018). *See also*

*Drury v. Debellis*, No. 15-2137, 2017 WL 2968393, at *6–7 (D.N.J. July 12, 2017). The state court cases citing the Rights and Responsibilities are appeals of administrative actions, not private suits for damages. *See, e.g., Delgado v. New Jersey Dep't of Corr.,* No. A-0923-14, 2015 WL 8547359, at *1 (N.J. Super. Ct. App. Div. Dec. 14, 2015); *Bryant v. Dep't of Corr.*, 2006 WL 59819 (N.J. Super. Ct. App. Div. Jan. 12, 2006) (rejecting the petitioner's appeal under N.J. ADMIN. CODE § 10A:4-3.1(a) based on the substantive record); *Smith v. New Jersey Dep't of Corr.*, 786 A.2d 165 (N.J. Super. Ct. App. Div. 2001). These claims shall be dismissed.

**D. Statute of Limitations**

Finally, Defendants ask the Court to dismiss Plaintiff's claims that accrued prior to May 5, 2013, two years before Plaintiff filed his initial complaint.

"The running of the statute of limitations is an affirmative defense." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (citing Fed. R. Civ. P. 8(c)(1)). "A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Id.* The statute of limitations for § 1983 claims in New Jersey is two years. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) ("[S]tate law provides the statute of

limitations applicable to a section 1983 claim."); N.J. STAT. ANN. § 2A:14-2(a). "Under federal law, a cause of action accrues 'when the plaintiff knew or should have known of the injury upon which the action is based.'" *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014) (quoting *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009)). "State law, unless inconsistent with federal law, also governs the concomitant issue of whether a limitations period should be tolled." *Dique*, 603 F.3d at 185.

New Jersey recognizes the continuing violation theory, which is "an equitable exception to the statute of limitations." *Roa v. Roa*, 985 A.2d 1225, 1231 (N.J. 2010) (internal citation and quotation marks omitted). "The doctrine provides that when an individual experiences a 'continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases.'" *Id.* (quoting *Wilson v. Wal-Mart Stores*, 729 A.2d 1006, 1010 (N.J. 1999)). *See also Cibula v. Fox*, 570 F. App'x 129, 135 (3d Cir. 2014).

In reviewing the amended complaint and attached documents, there are enough facts for the Court to plausibly infer that the continuing violation theory may be applicable to Plaintiff's claim. The Court does not find facts when it addresses a Rule 12(b)(6) motion. At this stage of the proceedings, the Court is required to assume the veracity of Plaintiff's well-pleaded allegations. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787

(3d Cir. 2016). Plaintiff has alleged that Defendants have continuously discriminated against him, a racial minority, since 2007 by denying him entry into the culinary arts program but admitting Caucasian prisoners with more time remaining on their sentences. At least one such act of alleged discrimination occurred within the two-year statute of limitations. *See* Amended Complaint ¶ D(11). As such, dismissing Plaintiff's claims under Rule 12(b)(6) on the face of the complaint would be inappropriate.

## V. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted in part. Plaintiff's free association and New Jersey Administrative Code claims are dismissed. Defendants shall answer the equal protection claim within 14 days of the entry of this order. Fed. R. Civ. P. 12(a)(4).

An appropriate order follows.


**September 17, 2018**          **s/ Jerome B. Simandle**
Date                            JEROME B. SIMANDLE
                                U.S. District Judge