**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **KEITH ASHLEY,**<br><br>    Plaintiff,<br><br>  v.<br><br>**DAVID METELOW,** *et al.*,<br><br>    Defendants. | **THE HONORABLE RENÉE MARIE BUMB**<br><br> Civ. No. 15-3153 (RMB-AMD)<br><br>OPINION |

**APPEARANCES:**

Keith Ashley
575398/589308B
East Jersey State Prison
Lock Back R
Rahway, NJ 07065
    Plaintiff pro se

Suzanne Marie Davies, Esq.
OFFICE OF THE ATTORNEY GENERAL
25 Market Street
PO Box 112
Trenton, NJ 08625
    On behalf of Defendants

**BUMB**, United States District Judge

This matter comes before the Court on cross-motions for summary judgment filed by Defendants David Metelow, Don Siebert, Anthony Marrocco, and Tohni Stelts (improperly pled as Tanya Stelz) (ECF No. 91), and Plaintiff Keith Ashley (ECF No. 99). The Court will decide the motions on the briefs, pursuant to Federal Rule of Civil Procedure 78.

I.  BACKGROUND

Plaintiff is a convicted and sentenced state prisoner in the custody of the New Jersey Department of Corrections ("DOC"). (Defendants' Statement of Facts ("DSOF"), ECF No. 91-1 ¶ 1; Plaintiff's Statement of Facts ("PSOF") ECF No. 99-1 ¶ 2). At all times relevant to this action, Plaintiff was incarcerated in South Woods State Prison ("SWSP"), in Bridgeton, New Jersey. (DSOF ¶ 2; PSOF ¶ 5). At the time relevant to the complaint, David Metelow was the SWSP Supervisor of Education, Don Siebert was the Assistant Superintendent of the SWSP Education Department, Anthony Marrocco was a teacher in the Culinary Arts program, and Tohni Stelts was a secretary in the SWSP Education Department. (DSOF ¶¶ 3-6; PSOF ¶¶ 6-9).

SWSP offers several vocational programs for inmates, including Building Trades, Residential Electric, Heating and Ventilation and Air Conditioning/Plumbing (HVAC), Cosmetology, Masonry, Horticulture, Graphic Arts, and Culinary Arts. (DSOF ¶ 7; PSOF ¶ 11). Plaintiff applied to the Culinary Arts program on October 23, 2007; September 28, 2009; December 9, 2009; and September 22, 2013. (DSOF ¶¶ 17-21; PSOF ¶ 17). Each time, Plaintiff was informed that he was ineligible for the program because he was more than two years away from his parole eligibility date ("PED"). (DSOF ¶¶ 17-21, 23; ECF No. 91-4 at 179). Plaintiff has a PED of January 27, 2023. (ECF No. 91-4 at 2).

Plaintiff filed an Inmate Remedy Form on September 25, 2014 asking why he had been banned from Culinary Arts. (Id. at 179). Don Siebert, the Assistant Superintendent of the SWSP Education Department, responded that the culinary arts certification expired after five years "[t]herefore, for both financial and pragmatic reasons, we give preference to inmates whose PED or maximum dates are within the next two years." (Id.). Plaintiff appealed that response to former SWSP Administrator Kenneth Nelson, who indicated that Plaintiff was not banned from the program and had been "on and off the Culinary Arts Waiting List since 2007." (Id. at 181).

Plaintiff filed another remedy form objecting to the failure to enroll him in Culinary Arts on November 13, 2013. (Id. at 183). Plaintiff was informed that he was on the waiting list and "you will be interviewed when time eligible." (Id.). Plaintiff responded that he did not want to be on the waiting list "due to the racial discrimination to get in the program." (Id.). Plaintiff is African American. (DSOF ¶ 1; PSOF ¶ 3). He asserted that Caucasian inmates with more time on their sentences were permitted to enroll in Culinary Arts. (ECF No. 91-4 at 183). Plaintiff applied to Culinary Arts again on July 7, 2014 and July 11, 2014. This time, he was rejected for not having a verified high school diploma. (Id. at 187-88). Plaintiff was transferred to Northern State Prison on August 7, 2014. (Id. at 14).

On May 5, 2015, Plaintiff filed this civil rights complaint under 42 U.S.C. § 1983 alleging Defendants violated his Fourteenth Amendment right to equal protection, First Amendment right to free association, and his New Jersey Administrative Code Inmate Rights and Responsibilities. (ECF No. 1). Plaintiff amended his complaint on February 7, 2017. (ECF No. 19). The Honorable Jerome B. Simandle, D.N.J.,[1] dismissed Plaintiff's free association and New Jersey Administrative Code claims on September 18, 2018. (ECF No. 54). Plaintiff's equal protection claim proceeded. (Id.).

Defendants now move for summary judgment, arguing that Plaintiff was not discriminated against on the basis of his race, nor was he treated differently from similarly situated persons. (ECF No. 91-2). They assert the identified Caucasian inmates were eligible for exceptions for admission into the Culinary Arts program whereas Plaintiff was not. Defendants further contend that Plaintiff is barred from recovering damages under the Prison Litigation Reform Act because he has not alleged a physical injury. See 42 U.S.C. § 1997e(e).

Plaintiff also moves for summary judgment. (ECF No. 99-1). Plaintiff asserts Defendants permitted Caucasian inmates to enroll in the Culinary Arts program even though their PEDs were more than two years away. He asserts the PED was a pretextual reason. He

---

[1] The matter was reassigned to the undersigned on August 9, 2019. (ECF No. 86).

4

further argues that he qualified for the exceptions for admission into the program even though his PED was more than two years away, but only the Caucasian inmates could use the exceptions. Plaintiff also reasserts his claims under the Free Association Clause and the New Jersey Administrative Code.

II. DISCUSSION

    A. <u>Summary Judgment Standard</u>

Summary judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>U.S. ex rel. Kosenske v. Carlisle HMA, Inc.</u>, 554 F.3d 88, 94 (3d Cir. 2009). The moving party must demonstrate there is no genuine issue of material fact, and then the burden shifts to the nonmoving party to present evidence to the contrary. <u>Josey v. John R. Hollingsworth Corp.</u>, 996 F.2d 632, 637 (3d Cir. 1993) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).

A party asserting that a fact is or is not genuinely disputed must support the assertion by citing materials in the record, including depositions, documents, affidavits or declarations or other materials. Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "At the

5

summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(c)).

    B.   <u>Plaintiff's Equal Protection Claim</u>

Both parties move for summary judgment on Plaintiff's equal protection claim under the Fourteenth Amendment. The Court denies both motions as there are remaining disputed issues of material fact as to whether Plaintiff was treated differently than similarly situated inmates.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). "To make out a viable claim for a violation of equal protection rights, a plaintiff must demonstrate purposeful discrimination." Bradley v. United States, 164 F. Supp. 2d 437, 445 (D.N.J. 2001), aff'd, 299 F.3d 197 (3d Cir. 2002). To prove his racial discrimination claim, Plaintiff must prove that he is a member of a protected class and that he was treated differently from similarly situated individuals. Id. "Once a plaintiff makes this showing, the burden shifts to the defendant to articulate a

6

legitimate, nondiscriminatory reason for the difference in treatment. The plaintiff must then rebut that reason as pretextual in order to set forth a viable equal protection claim." Id. at 445-46 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Stewart v. Rutgers, 120 F.3d 426, 432 (3d Cir. 1997) (applying McDonnell Douglas standard in equal protection cases)). It is uncontested that Plaintiff is African American. He is therefore a member of a protected class.

Defendants argue Plaintiff was not denied entry into the Culinary Arts program because of his race, but because he was more than two years from his PED and did not have a verified high school dipolma. They argue this policy is rationally related to a legitimate government interest because the culinary certificates expire after five years and limited government resources justify restricting which inmates may participate in the program. In response, Plaintiff has named seven, non-African American individuals who were admitted into the program despite being more than two years from their PED: H. Quagliani, Cliff Graf, Edward Chinchilla, David Colonpons, Christian Gougher, William Steltz, and Calvin Sprouge.

Defendants do not dispute that inmates have been permitted to participate in the Culinary Arts program even if they were more than two years before their PEDs. Defendant Marrocco stated in his Interrogatories that

7

> Certain inmates may be permitted into the Culinary Arts program that are not within two years of the P.E.D. Those include inmates with longer sentences that are employed in the facility's prison, such as but not limited to ODR workers, as well as inmates that cook for the population, Ramadan food servers, or teaching assistants for the Culinary Arts Program.

(ECF No. 91-4 at 44 ¶ 4). Jecrois Jean-Baptiste, the DOC Director of Programs & Community Services, certified that Inmates Graff and Chinchillo were enrolled into the Culinary Arts program even though they were more than two years from their PED because they were Teacher's Assistants for the program. (ECF No. 91-4 at 137 ¶ 16). Director Jean-Baptiste certified "Inmate Graf was hired as a Teacher's Assistant on December 28, 2004, enrolled in the Culinary Arts program on July 15, 2005, completed the program, and became a Teacher's Assistant." (Id. at 138 ¶ 19). According to Director Jean-Baptiste, Inmate Steltz was enrolled in Culinary Arts because he had "a food service detail, the Culinary Arts program was available on the facility on which he was housed, and a new class was beginning." (Id. ¶ 21).[2] He also certified that Inmate Gougher was enrolled in the program but signed out after one day. (Id. ¶ 14).

The Court cannot determine on the record before it that either party is entitled to judgment as a matter of law. Up until July

---

[2] Inamtes Colonpons and Sprauge were never enrolled in the Culinary Arts program. (ECF No. 91-4 at 137 ¶¶ 12-13). The DOC was unable to locate an Inmate Quagliani. (Id. ¶ 10).

8

2014, Defendants' stated rationale for denying Plaintiff entrance into the Culinary Arts program was that he was more than two years from his PED. They now concede that "certain inmates" were permitted to enter the program more than two years before their PED if they had food service jobs, among other exceptions. (Id. at 23 ¶ 4). Defendants further concede that Plaintiff held food service jobs while he was incarcerated at SWSP. (Id. ¶ 23). They then argue that Plaintiff's

> housing movements and detail changes effected [sic] his possible placement into the Culinary Arts program – meaning, at times that Plaintiff held a food service job, the Culinary Arts program was not available on the facility he was housed on, or the Culinary Arts program was [not] in progress at the time he was assigned food service jobs and he would have to wait . . . for a new class to start.

(Id.).

Plaintiff disputes this interpretation, and there is evidence in the record to support Plaintiff's argument. The documents provided by Defendants indicate Plaintiff worked as a "F2-Inmate Dine Hall F.S." employee between September 21, 2009 and November 2, 2009. (ECF No. 91-4 at 9). Plaintiff was housed in SWSP-FAC2-H4-2L-2020U from September 3, 2009 to January 5, 2010. (Id. at 13).

On September 28, 2009, Plaintiff applied for the Culinary Arts program, listed on the application form as being available in

F#2 and F#3.[3] (ECF No. 99-4 at 4). The next day, he was placed on the waiting list for the computer class and denied placement on the Culinary Arts list because "Your PED is 2025. Mr. Marrocco takes students within 2 yrs of their PED." (Id.).

In contrast, Inmate Steltz was enrolled in the Culinary Arts program from July 12, 2012 to January 2, 2013. (ECF No. 91-4 at 158).[4] He did not have a food service job until March 25, 2013. (Id.). Therefore according to the documents provided to the Court, Inmate Steltz was enrolled in the program before he had a food service job, contrary to Director Jean-Baptiste's certification. (Id. at 138 ¶ 21).

There are other dates in the record during which Plaintiff was working in food services and appears to have long periods of stable housing assignments. To name just one other time, Plaintiff was housed in SWSP-FAC3-H6-1L-1081D from September 20, 2013 to August 7, 2014. (Id. at 14). At this time, he was employed as a Unit Pantry Worker 6-2L and 6-1L, (id. at 9), the same assignment Inmate Chinchillo[5] had from May 20, 2010 to April 4, 2011 prior to

---

[3] The Academic and Vocational Programs list indicates that Culinary Arts is only available in Facility 3, but states that "Inmates in Facility #2 may apply to both facilities that have classes." (ECF No. 91-4 at 117).
[4] Inmate Stelz's PED was January 13, 2019, meaning he was six-and-a-half years from his PED when he was enrolled in Culinary Arts in 2012. (ECF No. 91-4 at 158).
[5] Inmate Chinchillo's PED is February 13, 2020. (ECF No. 91-4 at 154).

one of his enrollments in the Culinary Arts program on April 4, 2011, (id. at 154).[6] Additionally, Inmate Gougher does not appear to have been an ODR worker, a cook for the population, Ramadan food server, or a teaching assistant for the Culinary Arts Program at the time he was permitted to enroll in the program. The fact that he withdrew for medical reasons after three days is irrelevant;[7] he was permitted to enroll despite being ten years from his 2020 PED and does not appear to meet any of the other exceptions provided to the Court.

From the available evidence, a reasonable factfinder could conclude that Plaintiff had a stable housing assignment and a food service position in a facility in which the Culinary Arts program was available. There is no evidence in the record as to when the Culinary Arts sessions began and ended, but the evidence indicates the program lasted about four months. (ECF No. 99-5 at 35). A reasonable factfinder could further conclude that at a time when Plaintiff was employed in a food services position, he was rejected

---

[6] The Court is unable to compare the other inmates' housing assignments with their work assignments as the information provided to the Court on the other inmates has been heavily redacted.

[7] Director Jean-Baptiste certified that Inmate Gougher enrolled in the program but signed out after one day. (ECF No. 91-4 at 137 ¶ 14). Inmate Gougher's progress notes report indicates the program started on February 22, 2010 and he withdrew on February 25, 2010. (Id. at 151).

from the Culinary Arts program on a pretextual reason of having a PED of more than two years.

There is a factual dispute as to whether Defendants' reasons for denying Plaintiff entry into the Culinary Arts program were pretextual. The Court denies summary judgment on this basis.

### C. Plaintiff's Free Association and New Jersey Administrative Code Claims

Plaintiff moves for summary judgment on his First Amendment Free Association and New Jersey Administrative Code claims. (ECF No. 99). These claims were dismissed by Judge Simandle on September 18, 2018. (ECF No. 54). Despite Plaintiff's multiple attempts to amend his complaint, these claims have never been reinstated. Summary judgment is denied.

### D. Prohibition of Damages under the Prison Litigation Reform Act

Finally, Defendants argue that Plaintiff cannot recover damages at trial because the Prison Litigation Reform Act prohibits damages for mental or emotional distress unless there has been a physical injury. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . .").

Plaintiff alleges a violation of his Fourteenth Amendment right to equal protection. "If a plaintiff claims violations of

12

constitutional or statutory rights, [§ 1997e(e)] does not bar claims for money damages." Rupe v. Cate, 688 F. Supp. 2d 1035, 1044 (E.D. Cal. 2010). A jury could award Plaintiff nominal damages.[8] Summary judgment is therefore denied on this basis.

III. CONCLUSION

For the reasons discussed above, the Court denies both summary judgment motions.

An appropriate Order follows.

Date:   October 25, 2019                s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**

---

[8] "To be clear, nominal damages are a trivial amount of monetary recovery that often does not exceed $1." Webster v. Rutgers-New Jersey Med. Sch., No. 15-08689, 2017 WL 3399997, at *9 (D.N.J. Aug. 4, 2017). Moreover, a defendant whose conduct demonstrates a reckless or callous indifference toward others' rights may be liable for punitive damages under § 1983. See Smith v. Wade, 461 U.S. 30, 56 (1983) (stating that a jury may award punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989) (holding that a defendant's conduct must be at minimum reckless or callous to impose punitive damages under § 1983).

The Third Circuit "has explained that the term 'reckless indifference' refers to the defendant's knowledge that he 'may be acting in violation of federal law.'" Whittaker v. Fayette Cty., 65 F. App'x 387, 393 (3d Cir. 2003) (quoting Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000)). Although it seems unlikely that Plaintiff would be entitled to punitive damages given the evidence presented to this Court, the Court leaves this issue for another day.

13