IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

KEITH ASHLEY,                       :
                                    :   Civ. No. 15-3153 (RMB-AMD)
            Plaintiff               :
                                    :
        v.                          :        **OPINION**
                                    :
DAVID METELOW, *et al.*,            :
                                    :
            Defendants              :

APPEARANCES

Plaintiff, Pro Se

Suzanne Marie Davies, Deputy Attorney General
Matthew Lynch, Assistant Chief, Deputy Attorney General
State of New Jersey
Office of the Attorney General
25 Market Street
P.O. Box 112
Trenton, NJ 08625
        On behalf of Defendants David Metelow, Don Siebert,
        Tanya Selz, and Mr. Marrocco

**BUMB**, United States District Judge:

### INTRODUCTION

This is an action under 42 U.S.C. § 1983 by Plaintiff Keith
Ashley, a prisoner in South Woods State Prison during the relevant
time period. Specifically, in an amended complaint filed on June
17, 2016, Plaintiff alleged that Defendants David Metelow, Don
Siebert, Tanya Selz, and Mr. Marrocco ("Defendants") violated his
rights under the Equal Protection Clause from 2007 to 2014 by
denying him participation in the New Jersey Department of
Corrections ("NJDOC") culinary arts program based on his race.

(Am. Compl., Dkt. No. 11.) On October 25, 2019, this Court denied Defendants' motion for summary judgment and set a trial date for December 2, 2019. (Opinion, Dkt. No. 103; Order, Dkt. No. 104.) On November 27, 2019, Defendants filed a letter on the docket, stating that this case had settled. (Letter, Dkt. No. 125.) The Court issued an Order administratively terminating this matter for 60 days, retaining jurisdiction pending consummation of settlement. (Order, Dkt. 126.)

I. Procedural History After the Purported Settlement

The Court received a letter from Plaintiff, dated January 7, 2020, which states, in relevant part:

> The reason for me writing to you today is that I will [sic] cannot and will not accept the State's settlement offer that the defendants' attorney discussed with me on November 27, 2019, and I am now willing to go to trial on the above civil case.

(Letter, Dkt. No. 129.)

On January 23, 2020, the Court received a letter from Deputy Attorney General Suzanne Davies on behalf of Defendants, stating:

> This matter settled on November 27, 2019, and the settlement is currently processing. In fact, this matter was administratively terminated by your Honor in a November 27, 2019 order. During a telephone conference between Defendants' counsel and Plaintiff on November 27, 2019, Plaintiff promised to dismiss all claims against Defendants in exchange for Defendants' promise to pay for Plaintiff to enroll in a 3-credit college, or vocational program, outside of the New Jersey Department of Corrections of his choice, up to

> $700.00. This settlement was conveyed to the
> Court the same day, and the matter was
> administratively terminated. Mr. Ashley is
> bound to the settlement terms to which he
> agreed to on November 27, 2019.
>
> Determining the logistics of this somewhat
> unusual settlement has required extensive
> consultation with the NJDOC. Specifically, it
> had to be determined how the money would be
> kept separate and reserved for an educational
> program specifically for Mr. Ashley, how Mr.
> Ashley would inform the NJDOC of the course he
> selected, and how the funds would then be
> disbursed to pay for the course. The details
> of how the settlement will be executed have
> been finalized by Defendants, and a settlement
> release with these details has been sent to
> Mr. Ashley.
>
> If Mr. Ashley continues to attempt to now back
> out of the settlement in this matter,
> Defendants respectfully request leave from the
> Court to file a Motion to Enforce the
> Settlement.

(Letter, Dkt. No. 128.) This was followed by a letter from
Plaintiff, dated January 24, 2020 and received on January 27, 2020,
seeking to reopen this action pursuant to Rule 60(b). (Letter,
Dkt. No. 129.) The Court received another letter from Plaintiff,
dated January 28, 2020 and received on February 5, 2020, responding
to Defendants' January 23, 2020 letter. (Letter, Dkt. No. 130.) In
the body of this letter, Plaintiff wrote:

> The reason for me writing to you today is that
> I am the plaintiff in the above—captioned
> matter. Please accept this letter in response
> to the defendants' letter filed on January 23,
> 2020, in which I do want to proceed to trial
> in this matter.

The matter of a settlement discussed on November 27, 2019, over the telephone with unknown people who was speaking for the defendants I could not identify and the settlement that the defendants' offered I am not satisfied with the settlement. It felt like I was being coerce, pressured, immediate, pressed, forced and under distress to settle something that I felt uncomfortable of doing by not having an attorney present. In fact, this matter could not have been administratively terminated being that I have not signed any documents. I cannot dismiss all claims against the defendants in exchange for defendants' promise to pay Plaintiff to enroll in a 3—credit college, or vocational program, outside of New Jersey Department of Corrections of my choice, up to seven hundred dollars ($700.00) . This settlement may have been conveyed to the courts the same day, but I may ask the court to dismiss this above action under the Federal Rules of Civil Procedure or, if the settlement cannot be consummated, request that the action be reopened if the Plaintiff file the necessary papers and the Plaintiff have done so. I am not bound to any settlement terms that was allegedly agreed to on November 27, 2019, when I was not thinking properly due to me being sick on that day. In addition, my brain was not processing what was really going on at the time.

I knew that I was going to court on Monday, December 2, 2019 and I was going to let the court know that I was going to trial, but due to the inclement weather, the court was closed on that day.

Please be advised that on Monday, January 27, 2020, I received legal mail and it enclosed a Release and Stipulation of Dismissal for me to complete along with a letter addressed to Your Honor about me wanting to proceed with trial. I returned the paper back to the Defendants' attorney unsigned and wrote across the documents void.

> I will continue to attempt to now back out of
> the settlement in this matter, Plaintiff
> respectfully request leave the Court to file
> a Motion to request to reopen the above action
> pursuant to Rule 60 (b) Federal Rule Civil
> Procedure.

(Letter, Dkt. No. 130.)

This matter is now before the Court upon Defendants' motion to enforce settlement (Mot. to Enforce Settlement, Dkt. No. 132) and Plaintiff's brief in opposition to the motion. (Pl's Opp. Brief, Dkt. No. 137.) The Court held an evidentiary hearing on Defendants' motion to enforce settlement on October 26, 2019. Mr. David Lynch, Assistant Chief of the State Police, Employment, and Corrections Division of the State of New Jersey Office of Attorney General, and Ms. Suzanne Davies, Deputy Attorney General, testified for Defendants. Mr. Ashley testified on his own behalf. For the reasons discussed below, the Court will grant Defendants' motion to enforce the settlement entered into on November 27, 2019.

II. TESTIMONY

A.   <u>Defendants' Witnesses</u>

Matthew Lynch was the first defense witness and testified as follows. Mr. Lynch was brought into this case with Ms. Davies in October or November 2019 for the purpose of representing the defendants at trial. Mr. Lynch and Ms. Davies, appearing in person, and Plaintiff, appearing by videoconference, engaged in a settlement conference with United States Magistrate Judge Donio in

the Fall of 2019. The case was unable to settle and Magistrate Judge Donio asked the parties to continue to work toward settlement.

A final pretrial conference was held before United States Magistrate Judge Williams on November 26, 2019. The subject of settlement was raised and Plaintiff demanded thirty or thirty-five thousand dollars. Defendants countered with an offer to arrange for Plaintiff to attend the culinary arts program at Northern State Prison, and Plaintiff rejected this offer. Defendants also offered $500, which Plaintiff rejected. The topic at the conference moved to trial, which would begin the following Monday, after the long Thanksgiving weekend. Plaintiff acknowledged that he did not yet have a plan for bringing witnesses to trial.

Just as the pretrial conference was ending, Plaintiff brought up the possibility of settlement for the payment by the Defendants for his opportunity to take correspondence college courses not offered by the NJDOC. Magistrate Judge Williams told Plaintiff to make a specific demand, and he demanded that Defendants pay for him to take eighteen credits hours of courses. Counsel for Defendants did not have authority to accept the demand.

Magistrate Judge Williams denied both party's motions to adjourn the trial and advised that if the case did not settle the next day, before the Court closed for the holiday weekend, trial would begin on Monday, December 2, 2019. Magistrate Judge Williams

directed Mr. Lynch and Ms. Davies to speak to their clients and contact Plaintiff by telephone before 1:00 p.m. the next day.

On November 27, 2019, Mr. Lynch obtained settlement authority to offer Plaintiff up to $700 for a three credit hour college or vocational course from outside the NJDOC, or as a second option, $500 and transfer to Northern State Prison to take the culinary arts program. Mr. Lynch and Ms. Davies, from Mr. Lynch's office, initiated a conference call to Plaintiff to offer these settlement options. At some point, the section chief from the Torts Section of the New Jersey Attorney General's Office entered the room during the phone conference, and Mr. Lynch and Ms. Davies advised Plaintiff of his presence asked the section chief questions about making payment for a college or vocational course, but they could not determine how a payment would be made.

Plaintiff made counter-demands but Mr. Lynch told him the two options they had offered were the final offers, and the deadline was near. Plaintiff continued to make counter-demands and Mr. Lynch reminded Plaintiff that he did not have to settle. Plaintiff asked for time to think, and Mr. Lynch agreed but there was a limited amount of times until they had to contact the Court with an answer regarding settlement. Plaintiff stepped away from the phone but Mr. Lynch could hear that he was talking to someone, although not what he was saying. Plaintiff came back to the phone and orally accepted the offer for up to $700 for a college or vocational

course not offered by the NJDOC. Mr. Lynch volunteered to send research materials to assist Plaintiff in choosing a course, but Plaintiff preferred to speak with his family and friends about his options. Mr. Lynch testified that he and Ms. Davies would draft the settlement release but they still had to determine how to make the payment for his chosen course. Mr. Lynch did not hear from Plaintiff again, but in January 2020, Ms. Davies informed him that Plaintiff had sent a letter stating that they had not settled and he wanted a new trial date.

On cross-examination, Mr. Lynch admitted that the November 27, 2019 conference call with Plaintiff was not recorded. They had informed Plaintiff when the section chief from the torts section entered the room to discuss payment from the tort claims fund. Mr. Lynch testified that he did not know Plaintiff was diabetic or that his sugar level had dropped or that his mind felt cloudy during the conference call. Mr. Lynch did not know that Plaintiff was transported to federal court in Camden on December 2, 2019, but he knew the writ for Plaintiff's appearance in court was signed before the pretrial conference. Mr. Lynch did not learn that Plaintiff had written void on the settlement release until Ms. Davies showed it to him. Mr. Lynch acknowledged that Mr. Ashley had denied several settlement offers prior to his acceptance of the offer on November 27, 2019.

The second witness for Defendants was Ms. Suzanne Davies, Deputy Attorney General, and counsel for Defendants in this matter. Ms. Davies recalled that she joined the settlement conference before Magistrate Judge Donio near the end of the conference, because she had been in court on another matter. Mr. Lynch told her that Plaintiff had rejected the settlement offer of $500. Magistrate Judge Donio suggested that Defendants consider the possibility of offering Plaintiff enrollment in the culinary arts program or to pay for an outside correspondence college course. After the settlement conference was unsuccessful, Defendants prepared for trial. Ms. Davies submitted the proposed final pretrial order to Magistrate Judge Williams, who would hold the final pretrial conference.

At the beginning of the pretrial conference, Magistrate Judge Williams was informed that Plaintiff had rejected an offer for $500 and participation in the culinary arts program at Northern State Prison. Magistrate Judge Williams then discussed how the trial would proceed. At the end of the conference, Plaintiff raised the issue of settlement and demanded that Defendants pay for him to enroll in eighteen credit hours of college courses offered outside the NJDOC. Ms. Davies and Mr. Lynch did not have settlement authority at that time. Magistrate Judge Williams denied the parties' request for adjournment of the trial and told Defendants

to call Plaintiff the next day regarding his counter-demand, and then advise the Court whether the case had settled.

After the final pretrial conference, Ms. Davies and Mr. Lynch spoke to their clients and determined they would counter-offer with up to a $700 payment for Plaintiff to enroll in a college or vocational course outside the NJDOC or, alternatively, $500 plus enrollment in the culinary arts program at Northern State Prison. From Mr. Lynch's Office, Ms. Davies and Mr. Lynch called Plaintiff at East Jersey State Prison on November 27, 2019 at 12:30 p.m. They informed Plaintiff of their best and final offers, advising him that if he rejected the offers, they would go to trial. Plaintiff continued to try to negotiate, but they stood firm. Plaintiff asked for a few minutes to think and then came back to the phone and accepted the offer for up to $700 for a college or vocational correspondence course outside the NJDOC. Plaintiff denied Mr. Lynch and Ms. Davies's offer of assistance in finding a course, preferring that his friends and family assist him. Ms. Davies and Mr. Lynch informed Plaintiff that the settlement release would be sent to him in the mail after they determined how to make payment for the course. Plaintiff said that he understood, he would look into choosing a course, and he would wait for the settlement release.

On November 27, 2019, Ms. Davies called to notify the Court of settlement, and she was instructed to file a letter on the

docket, which the Court responded to with an Order administratively terminating the case for sixty days, pending consummation of settlement. The next time Ms. Davies heard from Plaintiff was by way of the letter docketed in this matter on January 13, 2020.

On cross-examination, Ms. Davies testified that Plaintiff did not tell her and Mr. Lynch that he was sick on November 27, 2019, and that she had no indication that he was not feeling well. As the Plaintiff testified, Plaintiff was actively negotiating and gave no sign that he was unwell. She did not recall whether she had known at that time that Plaintiff was diabetic, and she did not know that he had not taken his diabetic medication yet that day. Nevertheless, she testified, Plaintiff did not appear confused, he never said he was having a medical issue, and he appeared to be fully functioning during the conference call. She did not know that he did not have his eyeglasses and felt stressed because he could not read small print. She did not know that Plaintiff felt intimidated by Mr. Lynch, who did most of the talking on the phone call. She testified that Mr. Lynch was not bullying or intimidating during the call. Finally, she testified that Plaintiff had accepted an oral settlement offer.

B.    Plaintiff's Testimony

Plaintiff testified that on December 2, 2019, he was transported to the Camden County federal courthouse, prepared for trial. However, he was informed by the New Jersey Department of

Transportation that the courthouse was closed due to inclement weather. Plaintiff did not know what was going on. Several weeks later, at the end of December 2019, he called the Court about the status of his case. He was told that his case was resolved, and he had a certain number of days to respond to the motion to enforce settlement.[1] Plaintiff felt this was underhanded because he had written void on the settlement. He sent several motions to the Court in response to the motion to enforce settlement.

Plaintiff testified that he felt bullied during the phone conference on November 27, 2019. He had told the defense attorneys several times, including on November 13, 2019 and November 26, 2019, that he did not want to settle and wanted to go to trial. Plaintiff said that he had no knowledge of accepting Defendants' offer on November 27, 2019. He said he did not care about money, he wanted to expose wrongdoing by the NJDOC by going to trial.

On cross-examination, Plaintiff agreed that it might have been February 2020 and not the end of December 2019, when he learned that a response was due to the Defendants' motion to enforce settlement. He further agreed that he had not tried to contact Ms. Davies or Mr. Lynch before he wrote a letter to the Court on January 7, 2020. Plaintiff testified that he and his

---

[1] By Order dated February 6, 2020, the Court granted Defendants' letter request to file a motion to enforce settlement and notified Plaintiff that he would have fourteen days to respond to the motion after it was filed.

family had contacted the newspapers about his case and he learned

from officers at East Jersey State Prison that there was an article

about his case on NJ.com. Plaintiff wanted to speak out against

the NJDOC and advocate for other prisoners. He wanted to go before

a jury.

III. FINDINGS OF FACT

After consideration of the parties' briefs and submissions,

and the testimony at the evidentiary hearing, the Court finds that:

> (1) On November 26, 2019, Plaintiff appeared by videoconference, and Mr. Lynch and Ms. Davies on behalf of Defendants, appeared in person for a pretrial conference before Magistrate Judge Williams in this matter;

> (2) the parties could not settle the case at the pretrial conference and the trial was set for December 2, 2019;

> (3) near the end of the pretrial conference, Plaintiff made a settlement demand for payment for him to enroll in 18 credit hours of correspondence college courses offered outside the New Jersey Department of Corrections;

> (3) Mr. Lynch and Ms. Davies stated that they did not have authority to settle on those terms;

> (4) Magistrate Judge Williams directed Mr. Lynch and Ms. Davies to speak to their clients and arrange a telephone call with Plaintiff the following day before 1:00 p.m., which was the deadline to advise the Court if the case was settled;

> (5) on November 27, 2019, Defendants, by their attorneys Matthew Lynch and Suzanne Davies, via telephone conference with Plaintiff,

offered to pay for Plaintiff to take a three credit hour correspondence course of his choosing up to the cost of $700, in exchange for dismissal of all claims in this matter against them;

(6) on November 27, 2019, Plaintiff accepted said offer by telephone conversation with Mr. Lynch and Ms. Davies; Plaintiff understood the terms of the settlement, took several minutes to think about it, and then orally conveyed his acceptance to Mr. Lynch and Ms. Davies;

(7) on November 27, 2019, Mr. Lynch and Ms. Davies informed Plaintiff that they would send him a written settlement release in the next few weeks, after determining how payment would be made for his chosen correspondence course, and they informed the Court that the case had settled (Letter, Dkt. No. 125);

(8) on November 27, 2019, the Court administratively terminated this action and the trial set for December 2, 2019 was canceled (Order, Dkt. No. 126);

(9) by mistake the writ of habeas corpus for Plaintiff's appearance in court on December 2, 2019 was not canceled, and the NJDOC had Plaintiff transported to the Camden County courthouse and then informed him that the courthouse was closed due to inclement weather;[2]

(10) on January 13, 2020, the Court received a letter from Plaintiff stating that he would not accept the State's settlement offer and was now willing to go to trial (Letter, Dkt. No. 127);

(11) on January 27, 2020, the Court received a letter from Deputy Attorney General Suzanne

---

[2] The federal courthouses in Newark and Trenton were closed due to snow but, to the best of the Court's recollection, the Camden courthouse was open. However, Mr. Ashley's trial had been canceled based on the notice of settlement the Court had received.

Davies, stating that the case settled on
November 27, 2019, and requesting leave to
file a motion to enforce settlement, if
necessary;

(12) on February 5, 2020, the Court received
a letter/motion from Plaintiff, seeking to
reopen this case and proceed to trial (Letter,
Dkt. No. 128);

(13) on February 6, 2020, the Court granted
Defendants' request to file a motion to
enforce settlement (Order, Dkt. No. 131), and
after briefing by the parties, an evidentiary
hearing was held on the motion on October 26,
2020.

IV.   CONCLUSIONS OF LAW

A.   <u>Legal Standard</u>

"Under New Jersey law, a settlement agreement is a form of
contract, and courts must look to the general rules of contract
law to resolve disputes over a settlement agreement." <u>Mortellite
v. Novartis Crop Prot., Inc.</u>, 460 F.3d 483, 492 (3d Cir. 2006)
(citing <u>Borough of Haledon v. Borough of N. Haledon</u>, 817 A.2d 965,
975 (N.J. 2003). "The burden of proving that the parties entered
into a settlement agreement is upon the party seeking to enforce
the settlement." <u>Cumberland Farms, Inc. v. New Jersey Dep't of
Envtl. Prot.</u>, 148 A.3d 767, 776 (N.J. Super. Ct. App. Div. 2016)
(citing <u>Amatuzzo v. Kozmiuk</u>, 703 A.2d 9 (N.J. Super. Ct. App. Div.
1997). "A contract arises from offer and acceptance, and must be
sufficiently definite 'that the performance to be rendered by each
party can be ascertained with reasonable certainty.'" <u>Id.</u> (quoting

Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435, 608 A.2d 280 (1992) (quoting West Caldwell v. Caldwell, 26 N.J. 9, 24–25, 138 A.2d 402 (1958)). "A contracting party is bound by the apparent intention he or she outwardly manifests to the other party." Id. at 777 (quoting Hagrish v. Olson, 603 A.2d 108 (N.J. Super. Ct. App. Div. 1992) (citing Looman Realty Corp. v. Broad St. Nat'l Bank of Trenton, 180 A.2d 524 (N.J. Super. Ct. App. Div.), certif. denied, 181 A.2d 782 (N.J. 1962)).

On the other hand, "[i]f a settlement agreement is achieved through coercion, deception, fraud, undue pressure, or unseemly conduct, or if one party was not competent to voluntarily consent thereto, the settlement agreement must be set aside." Jennings v. Reed, 885 A.2d 482, 488 (N.J. Super. Ct. App. Div. 2005) (quoting Peskin v. Peskin, 638 A.2d 849, 857 (N.J. Super. Ct. App. Div. 1994). "The test of capacity to make an agreement ... is, that a man shall have the ability to understand the nature and effect of the act in which he is engaged, and the business he is transacting...." Id. (quoting Eaton v. Eaton, 37 N.J.L. 108, 113 (Sup. Ct. 1874).

B.   Credibility Findings

Mr. Lynch and Ms. Davies gave consistent testimony concerning their settlement offer and Plaintiff's acceptance of that offer during their telephone conference on November 27, 2019. Plaintiff did not testify that he told Mr. Lynch or Ms. Davies that he was

diabetic, that he felt unwell, or that he was unable to understand what he was happening during the telephone conference. Mr. Lynch and Ms. Davies corroborated each other's testimony that they had no indication or impression that Plaintiff was unwell or did not understand the terms of the two separate offers on the table. Their impressions were based on Plaintiff's ability to negotiate on his own behalf by making counter-demands, and that he was clear-headed enough to ask for a few minutes to think it over before the deadline to contact the Court with the result of the negotiations. The Court finds that Plaintiff was well enough to understand the terms of the offers and understand that he accepted an offer to release Defendants from liability in this matter in exchange for payment of up to $700 to enroll in a college or vocational correspondence course offered from outside the NJDOC.

Based on the Court's observations and assessment of the facts, the Court does not find credible Plaintiff's testimony that he did not accept Defendants' offer, that he was too sick to understand what was happening during the phone conversation, and that he was bullied by Mr. Lynch into settlement. First, if Plaintiff had no desire to settle and if he was too sick to engage in the negotiation, there was nothing preventing him from informing Mr. Lynch and Ms. Davies during the phone conference. Throughout the litigation, Plaintiff has impressed the Court as someone who is not easily intimidated. Plaintiff described himself, on more than

one occasion, as the "voice for the voiceless". Plaintiff claims he has no incentive or objective but to expose the NJDOC for wrongdoing, but admittedly he already received media attention for proceeding past summary judgment in this matter. The complaint concerns Plaintiff's desire to take an educational course offered by the NJDOC, for which he was allegedly on a waitlist for seven years. Clearly, Plaintiff had a desire to further his education and a motivation to take a course outside of the NJDOC. When he accepted Defendants' offer, he had already achieved his objective of exposing his case to the media, and he also had the opportunity to gain an educational experience without the risks of going to trial and potentially losing any benefit he had gained, if the jury concluded that Defendants did not violate the law.

Second, on November 27, 2019, Ms. Davies served on Plaintiff a copy of her letter advising the Court of the settlement in this matter. (Letter, Dkt. No. 125.) On the same day, the Court served on Plaintiff, by regular mail, a copy of its Order administratively terminating this action pending consummation of the settlement. (Order, Dkt. No. 126.) The trial had been scheduled for December 2, 2019, and although it appears that a mistake was made by the Court by not canceling the writ for Plaintiff to appear, the fact that Plaintiff did not immediately contact the Court to determine when the trial would proceed clearly indicates that Plaintiff knew he had settled this case. Plaintiff claims he was told that the

Court was closed for inclement weather on December 2, 2019, but a reasonable person would have expected the trial might begin the next day.

Third, Plaintiff's correspondences to the Court, the first of which was received on January 13, 2019 (Letter, Dkt. No. 127) cause the Court to conclude that Plaintiff orally agreed to settle the case on November 27, 2019, and then regretted it and tried to undo the settlement by refusing to sign the settlement release. The letter from Plaintiff to the Court dated January 7, 2020 stated, "I am now willing to go to trial…." (Letter, Dkt. No. 127.) This strongly suggests to the Court that Plaintiff accepted Defendants' offer on November 27, 2019 because he was not ready or willing to go to trial on December 2, 2019, and he had changed his mind. There is nothing about this first communication with the Court that indicates Plaintiff believed the trial was still scheduled and would have begun on December 2, 2019, but for the court closing for inclement weather.

Plaintiff's letter dated January 28, 2020, received by the Court on February 5, 2020, further supports the Court's conclusion that Plaintiff orally accepted Defendants' settlement offer on November 27, 2019, and then changed his mind and attempted to back out by not signing the settlement release. (Letter, Dkt. No. 130.) Plaintiff's statement that he did not know whom he was speaking to on the phone on November 27, 2019, and his statement that "I am

not satisfied with the settlement," renders Plaintiff's testimony not credible. (Letter, Dkt. No. 130.) Plaintiff advised the Court that he received the settlement release from Defendants on January 27, 2020, and he returned it to them unsigned and voided. (Id.) Plaintiff wrote, "I will continue to attempt to now back out of the settlement in this matter." (Id.) The Court believes this is exactly what Plaintiff attempted to do. However, the law does not permit it. "An agreement to settle a law suit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." Zong v. Merrill Lynch Pierce Fenner & Smith, Inc., 632 F. App'x 692, 694 (3d Cir. 2015) (quoting Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1971). "Even the failure to execute release documents does not void the original agreement, or render it deficient from the outset. Execution of a release is a mere formality, not essential to formation of the contract of settlement." Jennings, 885 A.2d at 489 (citing Hagrish v. Olson, 603 A.2d 108 (N.J. Ct. App. Div. 1992) (a settlement agreement which required defendants to pay a stated sum of money and which barred plaintiffs from pursuing an appeal is enforceable even though the plaintiffs failed to execute general releases); see also Bistricer v. Bistricer, 555 A.2d 45 (N.J. Ch. Div. 1987) (holding case was settled at settlement conference where parties

agreed on essential terms, notwithstanding plaintiff's numerous objections to the written agreement).

For all the foregoing reasons, the Court finds that Plaintiff entered into a binding agreement to release Defendants from liability in this case in exchange for a $700 payment to enroll in a college or vocational correspondence course from outside the NJDOC.

V. CONCLUSION

For the reasons discussed above, Defendants' motion to enforce settlement is granted. The Court will close this matter.


**Date:** **November 6, 2020**

                              s/Renée Marie Bumb
                              **RENÉE MARIE BUMB**
                              **United States District Judge**